### In the Matter of the Estate of EDWARD TUCK, Deceased.

Surrogate's Court, New York County, April 12, 1939.

*Wiley, Willcox & Sheffield* [*Bertram F. Willcox* of counsel], for the executors.

*Wright, Gordon, Zachry & Parlin,* for Natalie I. Dutreil, distributee under the will of Georgina L. Ingraham.

*Carter, Ledyard & Milburn* [*Sidney W. Davidson, Archibald S. Alexander* and *Williamson Pell* of counsel], for the Society of the Cincinnati, the New Hampshire Historical Society and others.

*Rand & French,* for Julia Tuck Firth.

*Clarence A. Weill,* for the French Benevolent Society.

*Robert C. Rand,* special guardian, for Catherine P., Dorothy M. and Anne D. Hooker.

*Lester R. Bachner,* special guardian, for Edward Tuck and Edward Tuck Hall.

FOLEY, S. This is an application for a construction of the will in which a determination is sought as to the nature of certain gifts as specific, demonstrative or general legacies.

The testator was a man of considerable wealth. By his will, which was executed on October 14, 1937, he made substantial gifts to educational and charitable corporations and to numerous employees, relatives and friends. He divided his residuary estate among a nephew, a grandniece and great-grandnephews and nieces who appear to have been a special object of his bounty. Most of the gifts in question are similar in form and provide for legacies of shares of stock in three corporations in which the decedent had large holdings, as follows: " I give and bequeath to * * * five hundred (500) Shares of Chase National Bank stock." Some of these gifts are coupled with outright gifts of cash and in other instances with specific gifts of tangible personal property.

It has been established to the satisfaction of the surrogate that at the time of the execution of the will the testator possessed large holdings in the three corporations whose stock is the subject-matter of the gifts in question. At the date of the execution of the will the testator owned more than sufficient stock in each corporation to satisfy all of the gifts in question. Between the execution of the will and the date of the testator's death on April 30, 1938, he found it necessary to dispose of many of his securities. As a result he did not own sufficient securities at the date of his death to satisfy the gifts in question in kind. It also appears that at the date of his death the testator's securities were pledged as collateral for a loan.

The question has arisen as to the nature of the legacies so as to determine upon which of the legatees the loss or abatement shall fall. If the legacies are specific, each must abate proportionately.

If the legacies are demonstrative or general, the entire loss will fall upon the residuary legatees.

The language of the will, coupled with the fact that at the date of its execution testator possessed securities sufficient to satisfy the bequests in kind, would seem to indicate that the testator intended the legacies to be specific. That such was his intention is clearly indicated by subsequent provisions of the will. By article twelfth of the will the testator authorized his executors to retain investments owned by him at death and also gave the executors authority to sell " if not divided in kind or specifically bequeathed herein, any stocks, bonds * * * securities or other investments * * * belonging to me." This reference to specific bequests of securities, stocks or bonds would have no significance if it did not refer to the gifts in question of the stipulated number of shares of stock in the three corporations. Here, as in all cases involving the determination of the nature of legacies, the question is solely one of intention. As was stated by Judge CRANE in *Matter of Security Trust Co.* (221 N. Y. 213, 219), " it is the intention of a testator, as gathered from his entire will, which determines whether a legacy be general or specific." The language of the will and the facts and circumstances surrounding its execution establish the clear intention on the part of the testator to make gifts of stipulated numbers of shares of *his* stock to the legatees. The legacies are, therefore, held to be specific and each must adeem proportionately.

Similarly, each specific legacy must bear a *pro rata* share of the loan for which the securities were pledged by the decedent. Title to a specific legacy passes directly to the legatee and he takes the property in such condition and subject to all charges in existence at the date of the testator's death. (*Matter of Columbia Trust Co.*, 186 App. Div. 377; *Matter of Tabbagh*, 167 Misc. 156; Dec. Est. Law, § 38.)

The dividends on the securities specifically bequeathed belong to the specific legatees. The dividends may be used as a setoff on the *pro rata* share of each specific legatee of the interest and principal of the loan.

The personal claim of the corporate co-executor is allowed and the liquidation of the securities and the payment of said claim from the proceeds thereof ratified and confirmed.

The surrogate further holds that the remission of the indebtedness to Georgina Ingraham was not lost by her death prior to the death of the testator. Article four of the will constituted a completed release and discharge of any claims not only against her but against her estate of any indebtedness due to the decedent's estate.

Submit decree on notice construing the will and allowing the personal claim accordingly.