In the Matter of the Accounting of ARTHUR L. MEPHAM, as Executor of CATHERINE J. LOZIER, Deceased.

Surrogate's Court, Monroe County, December 9, 1947.

*Hampton H. Halsey* for Hannah Baldwin and others, petitioners.

*Arthur L. Mepham,* executor in person.

*David H. Shearer* for Laura Eyer and others, legatees.

*Lloyd V. Storandt* for William Mix and others, legatees.

WITMER, S. The issue has been raised in this judicial settlement proceeding as to whether the legacies contained in the first paragraph "Third" of the will are specific or general. Through inadvertence the will contains two paragraphs marked "Third". In his account filed herein the executor treated the said legacies as specific. The residuary legatees have petitioned to have the will construed as creating general legacies in said paragraph "Third", and the executor has joined with them and now urges that the legacies be held to be general.

The first paragraph "Third" provides, in part, as follows: "I give and bequeath unto the following, the number of shares of my capital stock in The Stanley Works of New Britain, Connecticut, set opposite their respective names, as follows:

"To my brother William Mix and Ella Mix, his wife, or to their survivor, one hundred shares.

"To my niece Agnes Ades, seventy-five shares.

"To my nephew John W. Horn and his wife Vera Horn, or to their survivor, fifty shares.

"To my nephew Alfred Horn and his wife Mary Horn, or to their survivor, fifty shares.

"To my nephew Lemuel W. Campbell and his wife Ethel M. Campbell, or to their survivor, fifty shares.

"To my friend Nellie Ferguson now residing at No. 176 Congress Avenue, Rochester, N. Y., sixteen shares." The paragraph contains eight additional provisions to friends, similar to the last-quoted provision, the number of shares, however, varying from two to twenty-five. The gifts to the brother, the three nephews and the niece total 325 shares; the gifts to the nine friends total 92 shares, amounting altogether to 417 shares.

The second paragraph "Third" provides as follows: "In case I, at my death, own an insufficient number of shares in The Stanley Works to make in full, the above bequests * * *, I direct that the number of shares which I do own be divided among the legatees named * * * proportionately so that the amount received by each will bear the same proportion to that received by the others as the amount given him or her bears to that given to the others in said paragraph."

The will was executed on October 17, 1944, and the testatrix died on November 24, 1946. Her husband had died three or four years before she made her will, leaving to her 417 shares

of the common stock of The Stanley Works. Said shares were then transferred into the name of the testatrix and were represented by one certificate. She owned and held this certificate for said 417 shares at the time of making her will and at her death. Since her death cash dividends in excess of $1,100 have been paid on the stock; and a stock dividend of 69½ shares of such common stock, valued by the executor at $60 per share, has been delivered to the executor, and an additional stock dividend of 9 36/50 shares of the common stock of The Hart-Cooley Company, a subsidiary of The Stanley Works, has also been delivered to the executor. These cash and stock dividends are the stake involved in this construction proceeding.

If the legacies are specific the dividends belong to the specific legatees, and no executor's commissions are payable thereon; if they are general, such dividends are a part of the residuary estate. (*Matter of Davis,* 184 Misc. 952, 954; *Matter of Lamborn,* 171 Misc. 734, 736; *Matter of Hebbard,* 142 Misc. 41, 44; Surrogate's Ct. Act, § 285, subd. 5.)

Although the common stock of The Stanley Works is not listed on any exchange, it appears that it is not closely held and that there are frequent over-the-counter sales of such stock.

The residuary legatees and executor argue that because no specific shares or certificates thereof are identified as given to the respective legatees in paragraph " Third ", and because the testatrix does not give " my 417 shares of stock ", but rather gives a " number of shares of my capital stock ", the gifts are not specific. They also urge that the second paragraph " third " makes it clear that the testatrix intended general legacies in the previous paragraph, because she here felt it necessary, in effect, to excuse her executor from the duty of purchasing stock to make up any deficiency which might exist in her holdings at the time of her death, which her executor would only need to do if the legacies were general.

The rule is that a legacy is presumed to be general rather than specific. (*Tifft* v. *Porter,* 8 N. Y. 516; *Matter of Ward,* 165 Misc. 165, 166–167.) It is also the rule that whether a legacy is general or specific depends upon the intention of the testatrix at the time the will was executed (*Matter of Hebbard,* 142 Misc. 41, *supra*), as shown by the entire will and the surrounding circumstances. (*Davis* v. *Crandall,* 101 N. Y. 311; *Matter of Security Trust Co.,* 221 N. Y. 213, 219.)

It is clear that in said paragraph " Third " the testatrix was referring to the 417 shares of stock which she owned and which were evidenced by the single certificate which she held. The

legacies therein are specific, and the legatees are entitled to the dividends and increase thereon in proportion to their gifts.

The shares of stock were all alike, and it is too late now to argue that the testatrix must identify the particular shares of her holdings of such stock which she gives to each legatee. In this respect the shares are like so many dollar bills or bushels of wheat, that is, they are fungible, and it is immaterial which of the testatrix' shares are used to satisfy a particular gift. The cases cited herein are so unanimous on this point, that no separate citation therefor is needed.

The form of the bequest herein, to wit, " I give   *   *   * of shares of my capital stock " has been long accepted as the proper form in which to make a specific bequest. (*Matter of Security Trust Co.*, 221 N. Y. 213, *supra*; *Crawford* v. *McCarthy*, 159 N. Y. 514; *Matter of Brewster*, 144 Misc. 888; *Matter of Lamborn*, 171 Misc. 734, *supra*; *Matter of Davis*, 184 Misc. 952, *supra*; *Matter of Morphy*, 70 N. Y. S. 2d 167; 1 Butler, New York Surrogate Law & Practice, § 210, and see § 211.)

*In Matter of Security Trust Company* (*supra*), at pages 219–220, the court said: " The counsel in the present case concede, and the concession is supported by all the authorities, that if the word ' my ' had been used before the word ' stock ' so that the bequest which James T. Miller made had read, ' I give to my sister, Louisa J. Reynolds, two hundred (200) shares of *my* stock of the Kee Lox Manufacturing Company,' the bequest would have been specific."

It remains, therefore, to consider what effect, if any, the second paragraph " Third " quoted above has upon the nature of the legacies in the first paragraph " Third ". In this connection it should be noted that in paragraphs numbered " Fourth " through " Eighth " the testatrix made five specific bequests of a painting and certain jewelry; and in paragraph " Ninth " she stated that in case she had given away any such items prior to her death, " any bequest of such article or articles so given away shall be and become of no force and effect." In paragraph " Tenth " she gave the residue of her property to four friends, referring to three of these as the sisters of her friend, Martha Ginegaw, the beneficiary of fifteen shares of stock in paragraph " Third ". The account herein shows that the value of testatrix' estate, apart from the stock and the items admittedly specifically bequeathed, is less than $600.

Contrary to the contention of the residuary legatee that the second paragraph " Third " shows that the testatrix intended the gifts of the stock to be general bequests, it may as well be

argued that it reveals that the testatrix intended the first paragraph "Third" to have the usual meaning which the law ascribes to such language, as noted above. The testatrix was an old woman. She was not in the business of buying and selling stocks. She only contemplated a possible partial ademption of her gifts of such stock, and only to the extent that she might need to sell some of it for her own maintenance. To be sure, the law would provide for such proportionate ademption without provision therefor in the will (*Matter of Security Trust Co., supra,* p. 221; *Matter of Tuck,* 171 Misc. 37, 39; *Matter of Kopff,* 32 N. Y. S. 2d 85), but the provision bears a relation to paragraph "Ninth" of the will, and it is clear that the testatrix was not attempting by the second paragraph "Third" to change the nature of the gifts in the preceding paragraph, but was only making doubly sure that if any of such stock were sold, a proportionate abatement of the gifts of stock would result.

The further contention of the residuary legatees, that the testatrix meant said gifts of stock to be general legacies in order to be sure that the gifts would not be adeemed, has no application to the language and facts in this case, and is merely an academic discussion of the nature and danger of specific bequests.

Submit decree accordingly.