# Richmond

JENNIE FRIEDMAN, ET AL. v. BEATRICE SABOT, ET AL.

ANITA KOLNICK, AN INFANT, ETC. v. HARRY H. KANTER, EX'R, ETC., ET AL.

JACK SEIGLE, ET AL. v. HARRY H. KANTER, EX'R, ETC., ET AL.

June 15, 1964.

Record Nos. 5731, 5732, 5733.

Present, All the Justices.

*Howard I. Legum (Fine, Fine, Legum, Schwan & Fine*, on brief), for appellants, Jennie Friedman, et al.

*Morris B. Gutterman*, on brief, for appellant, Anita Kolnick, An Infant, Etc.

*Philip G. Denman (T. L. Sawyer; Willcox, Cooke, Savage & Lawrence*, on brief), for appellants, Jack Seigle, Et Al.

*Maurice Steingold (Eli S. Chovitz; Steingold, Steingold & Chovitz*, on brief), for appellees, Flora Kurlander; Bessie Gritz; Diana Auerbach; Ida Eliezer and Jennie Levintal.

I'Anson, J., delivered the opinion of the court.

Harry H. Kanter, executor under the will of Ben Robin, deceased, filed a bill against the legatees and devisees named under the decedent's will, asking the court to construe testator's will as to whether the bequests of certain corporate stocks are general or specific, and to decree the manner in which the assets of the estate should be distributed.

The bill alleged, insofar as here material, that the testator made many bequests of stocks and cash to certain individuals and associations; that at the time of his death testator owned sufficient shares of stock to satisfy these bequests; but that after payment of debts, taxes and administration expenses there would be insufficient cash in his hands as executor to satisfy in full all of the cash bequests contained in the will.

After considering the will and a codicil thereto, which was the only evidence introduced at an *ore tenus* hearing, the chancellor entered a decree holding, *inter alia*, that the bequests of stock were specific and thus the legatees were entitled to receive the exact number of shares specified in the will without reduction, and that the cash legacies be reduced pro rata to pay the debts, taxes and administrative costs of the decedent's estate. From this decree we granted separate appeals to (1) Jennie Friedman, Multiple Sclerosis Society, Jack Seigle, Ben Robins, Julius Robins, and Anita Kolnick, an infant, by her guardian *ad litem* (Record No. 5731); (2) Anita Klonick, an infant, by her guardian *ad litem* (Record No. 5732);

and (3) Jack Seigle, Ben Robins and Julius Robins (Record No. 5733). All these appellants are legatees of specified sums of money under the will in question.

The sole question presented by these three appeals is whether the legacies of shares of stock under the will of the testator are general or specific. Thus the three appeals will be considered as one.

The testator, who died on July 15, 1961, executed his will on June 11, 1959, and a codicil revoking two cash legacies was dated September 6, 1960. After providing for the payment of taxes, debts and administrative costs, the testator made eleven cash bequests in varying amounts to certain individuals and charitable associations. Three of these individuals were nephews of the testator and one was a great niece. He bequeathed shares of stock in various corporations to nine nephews and nieces. Three parcels of real estate were devised to two of his nephews and a niece.

Following the residuary clause of the will the testator provided in a separate paragraph:

"I hereby direct my executor, in the event any of the shares of stock heretofore bequeathed shall be disposed of during my lifetime, he shall pay to the beneficiary of such shares an equivalent amount in cash, based upon the market value of such stock as of the day of my death."

The codicil to the will merely revoked two cash bequests and directed that these amounts become a part of the residuary estate.

The appellants contend that the bequests of stock are general and not specific.

If these legacies are general, they, together with the cash bequests, abate ratably to pay the debts, taxes and administrative costs of the testator's estate. On the other hand, if the legacies are specific, the beneficiaries are entitled to receive the exact shares of stock enumerated in the will without abatement. *Chavis* v. *Myrick*, 190 Va. 875, 879, 58 S. E. 2d 881, 883; 20 Mich. Jur., Wills, § 157, p. 380.

A general legacy was recently defined by this Court to be "one which is not limited to any particular fund or thing, does not direct the delivery of any particular property, and may be satisfied out of the general assets of the testator's estate;" while a specific legacy is a bequest "of a specific thing, or some particular portion of the testator's estate, which is so described by the testator as to distinguish it from other articles of the same nature." *Warner* v. *Baylor, Ex'r,* 204 Va. 867, 874, 134 S. E. 2d 263, 269. See also *Chavis* v. *Myrick, supra,* 190 Va. at p. 879, 58 S. E. 2d at p. 883; 96 C. J. S.,

Wills, § 1125(e) and (d), pp. 878, 881-882; 57 Am. Jur., Wills, §§ 1401, 1402, pp. 935, 936.

It is a firmly established principle that the intention of the testator, as gathered from his entire will, determines whether a legacy is general or specific. *Warner* v. *Baylor, Ex'r, supra,* 204 Va. at pp. 875, 877, 134 S. E. 2d at pp. 269, 270; *Hill's Adm'rs* v. *Hill,* 127 Va. 341, 348, 103 S. E. 605, 608; 57 Am. Jur., Wills, § 1405, p. 939.

 Appellants argue that the provision of the will stating that "in the event any of the shares of stock heretofore bequeathed shall be disposed of during my lifetime, he [the executor] shall pay to the beneficiary of such shares an equivalent amount in cash, based upon the market value of such stock as of the day of my death," shows testator's intention to make the legacies of stock general rather than specific. We do not agree with this argument.

In *In re Flynn's Will,* 36 Misc. 2d 97, 232 N. Y. S. 146 (1962), the court had before it a strikingly similar provision and was called upon to determine whether certain bequests of stock were general or specific. There the testatrix made several bequests, and except for the named beneficiary, the language of each bequest was as follows:

"I give and bequeath One Thousand (1000) shares General Motors Corp. common stock to ST. FRANCIS HOSPITAL, Olean, N. Y., or if I do not own such stock at the time of my death, then I give the cash equivalent thereof based on the value of such stock on the date of my death."

The court held that the language used by the testatrix showed she was referring to stock owned by her at the time the will was executed; that she intended to give the beneficiaries her interest in the corporation represented by the shares of stock held by her; and that the legacies were specific. (232 N. Y. S. 2d at pp. 149-150.) See *In re Griffing's Will,* 11 App. Div. 2d 709, 204 N. Y. S. 2d 850, 852, 853, aff'd, 9 N. Y. 2d 919, 217 N. Y. S. 2d 90, 176 N. E. 2d 99.

In the present case, we think the language used in testator's will shows it was his intention to make the bequests of stock specific rather than general. The clause containing the alternate provision indicates that he owned the exact stocks bequeathed when he executed the will, and that he meant to give to the beneficiaries named the interests in the various corporations which his stock certificates represented. If the testator had intended the gifts of stock to be only claims against his general estate, and thus constitute general legacies, then the clause creating an alternate claim against his general estate would be mean-

ingless. The testator, anticipating the danger of ademption, although probably not known to him by that name, made the alternate provision so that in the event he disposed of any of the stocks during his lifetime the beneficiaries would not be barred from receiving an equivalent of the interests in the corporations which he bequeathed to them.

In the case of *Park Lake Presbyterian Church* v. *Henry's Estate* (Fla. App.), 106 So. 2d 215 (1958), relied on by the appellants, the court held that a clause similar to the one in the present case showed testator's intent to create a general legacy. However, in that case there was a strong and well reasoned dissent which is more in accord with the views we have herein expressed.

Appellants say that since most of the individuals named in the will in question were nieces and nephews of the testator, thus being the same degree of blood relationship to him, it must be presumed that testator intended to treat them all equally by making general bequests to each of them in the form of stock or money.

This argument is not supported by the provisions of the will. The testator bequeathed varying sums of money to some of his nieces and nephews and to others he gave stock in several corporations in different total shares. Still others were devised parcels of real estate. Such provisions do not give even the slightest indication that the testator intended to provide for his relatives on a uniform basis. On the contrary, these provisions show that the testator intended to give these individuals interests in his estate differing in character and amount.

Appellants also argue that the failure of the testator to use the possessive word "my" in referring to the stock bequeathed is a clear indication that he intended the stock legacies to be general and not specific. There is no merit in this argument.

It is true that the authorities generally agree that the use of the word "my" indicates an intention to make legacies of stocks specific, but the law is not so technical as to insist upon the use of the word "my" when other language in the will clearly indicates the intention of the testator to bequeath the shares of stock he owned at the time the will was executed. *In re Security Trust Co.*, 221 N. Y. 213, 219, 220, 116 N. E. 1006, 1008. See *Warner* v. *Baylor, Ex'r, supra,* 204 Va. at p. 876, 134 S. E. 2d at p. 270.

For the reasons stated, we hold that the shares of stock given to the nine beneficiaries named in testator's will constitute specific legacies, and thus they are entitled to receive the exact shares of

stock specified in the will. Thus the cash bequests, which are clearly general legacies, must be reduced pro rata to pay the debts, taxes and administrative costs of the decedent's estate.

Accordingly, the decree of the court below is

*Affirmed.*